IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAKE W. GIBSON                                                                                      PLAINTIFF

V.                                  NO. 14-5210

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Jake W. Gibson, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.   Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on September 9, 2010, alleging an inability to work since August 1, 2010, due to his back and two herniated discs. (Tr. 165-172, 227, 231). An administrative hearing was held on May 8, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 54-99).

By written decision dated August 29, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe –

1

osteoarthritis and degenerative disc disease of the lumbar spine. (Tr. 13). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff would not be able to return to his past work, but that there were other jobs Plaintiff would be able to perform, such as storage-facility rental clerk; production assembly worker (toy assembler, bottling line attendant, conveyor-line bakery worker); and machine tender (compression molding machine tender, leather riveting machine operator, and bindery machine feeder and offbearer). (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on April 30, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.     Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards

2

v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able

to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III.   Discussion:

Plaintiff raises the following issues in this matter:  1) Whether the ALJ erred in the weight he gave the opinion of Dr. Knox; 2) Whether the ALJ erred in failing to consider all of Plaintiff's impairments in combination: 3) Whether the ALJ erred in his credibility findings; and 4)  Whether the ALJ erred in his RFC determination. (Doc. 10).

#### A.   Consideration of Plaintiff's Impairments in Combination:

In his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'"  (Tr. 12).  He also stated that an impairment or combination of impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  (Tr. 12).  The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings.  (Tr. 12).  The ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the severity of one of the listed impairments.  (Tr. 14).  This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments.  See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

### B.  Credibility Analysis:

Plaintiff argues that the ALJ neglected to properly address his subjective complaints of pain. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

The Court first notes that in his decision, the ALJ specifically cited Polaski v. Heckler, 729 F.2d 1320, 1322 (8th Cir. 1984), and noted that the factors in Polaski mirror Social Security Ruling 96-7p and 20 C.F.R. 416.927 (Tr. 20).[1]  The ALJ noted Plaintiff's daily activities, such as the fact that he did not do any yardwork, occasionally went to the grocery store, cooked using the microwave, washed dishes, did laundry, only took showers, and took his children to the park and watched them play. (Tr. 15). The ALJ also noted that Plaintiff reported in his Function Report that he took care of his thirteen month old child and got his nine year old child to and from school and during the day, picked up the house and cooked. (Tr. 17). Plaintiff also reported he was able to lift twenty pounds. (Tr. 256).

The ALJ also addressed Plaintiff's allegations of pain and efficacy of treatment, noting that he tried hot baths, ice patches, injections, TENS unit, physical therapy, and that it

---

[1] This is contrary to Defendant's statement that the ALJ never cited Polaski.

5

was difficult for him to bend, and he awakened with pain. (Tr. 15). The ALJ considered the notes of the physical therapist, who worked with Plaintiff in 2011, who questioned the severity of Plaintiff's condition. (Tr. 18). These notes related to inconsistencies observed in Plaintiff's activities. For example, Plaintiff was observed using a pretty normal gait pattern, but once he entered the gym area, he had a limp and stepping gait pattern. (Tr. 384). It was also noted that Plaintiff's actions in the clinic did not reflect the stated pain Plaintiff was in, and that he had remarked on multiple occasions about getting pain prescriptions filled by multiple doctors. (Tr. 423).

It is clear that the ALJ properly considered the Polaski factors, and based upon the foregoing, the Court finds that there is substantial evidence to support the ALJ's credibility findings.

### C. RFC Determination and Weight Given to Dr. Knox's opinion:

In his decision, the ALJ found Plaintiff could perform light work with certain limitations. (Tr. 14). The ALJ also stated that he considered Dr. Knox's restrictions in his April 21, 2011 report,[2] but did not give them significant weight, for the following reasons:

> Dr. Knox's report is dated April 21, 2011. Subsequently, the claimant underwent fifteen physical therapy sessions from April 27, to July 21, 2011. As discussed above, the physical therapist noted significant inconsistencies that suggested the claimant might be feigning or exaggerating symptoms. Based upon the consistent observations by the physical therapist regarding inconsistencies on the claimant's part, the undersigned finds the restrictions recommended by Dr. Knox are not entitled to significant weight (See Exhibit 12F).

---

[2] On April 21, 2011, Dr. Knox reported that Plaintiff could return to work with the following restrictions: alternative sitting/standing and may walk short distances; limit lift/push/pull to 10 pounds and perform "sedentary work," no frequent bending, and limit standing to 8 hours a day. (Tr. 372).

(Tr. 19). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or

7

where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id

In this case, the ALJ considered Plaintiff's medical records and discussed the various findings made by Plaintiff's treating physicians as well as non-examining physicians. (Tr. 14-20). He also addressed all of the objective medical evidence, including x-rays and MRIs of Plaintiff's lumbar spine. The ALJ addressed the MRI scan taken on October 29, 2010, when Dr. Craig Cooper, Plaintiff's treating physician, diagnosed Plaintiff with lumbago, sciatica, annular tear, moderate spinal stenosis, and herniated nucleus pulpusus. (Tr. 344). Dr. Cooper recommended physical therapy, and thought Plaintiff might need epidural injections and possibly surgery. (Tr. 16). On November 4, 2010, Dr. Cooper opined that Plaintiff could lift up to 20 pounds, and limited his stooping, bending, and walking to comfort. (Tr. 344). On January 1, 2011, non-examining physician, Dr. Julius Petty, concluded that Plaintiff could perform light work with certain postural limitations. (Tr. 346-353). On April 1, 2011, Dr. Knox reported that Plaintiff should not do any frequent lifting over 10 pounds and that he should alternate sitting/standing, and may walk short distances. (Tr. 370).

The ALJ next discussed the examination on April 24, 2011, by Dr. Jason Holt, who diagnosed Plaintiff with lumbosacral neuritis unspecified; lumbago; lumbar disc displacement; and spinal stenosis unspecified. (Tr. 17, 360). Dr. Holt recommended a continuing physical therapy regimen and consideration of a lumbar transforaminal L5

8

epidurals. (Tr. 360). On October 31, 2011, Dr. Knox reported that a L5-S1 discogram with Marcaine demonstrated complete resolution of Plaintiff's discomfort. (Tr. 364).

The ALJ also considered and discussed Plaintiff's own description of his limitations, as was discussed above, and mentioned the fact that on April 24, 2011, Plaintiff reported to Dr. Holt that his average daily activity included exercise at a health club and heavy manual labor. (Tr. 17, 358).

On September 11, 2012, Dr. Holt examined Plaintiff and reported Plaintiff's gait was normal for his age, and that his movement was age appropriate. (Tr. 412). Plaintiff's flexion and extension ranges of motion were moderately restricted, and no lower extremity strength deficits were noted. (Tr. 413). Dr. Holt was going to refer Plaintiff to Dr. Thurman for potentially assuming his medication management, as there were no plans to proceed with surgery at that time, and Plaintiff might require chronic opiates to control his pain. (Tr. 413). He was using gapapentin with some efficacy and flexeril was helping as well. (Tr. 413).

The Court finds that the ALJ gave good reasons for not limiting Plaintiff to "sedentary" work, as recommended by Dr. Knox, and based upon the record as a whole, and for those reasons given in Defendant's brief, there is substantial evidence to support the ALJ's RFC determination.

### D.     Hypothetical Question to VE:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the

Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing such jobs as storage-facility rental clerk; production assembly worker (toy assembler, bottling line attendant, conveyor-line bakery worker); and machine tender (compression molding machine tender, leather riveting machine operator, and bindery machine feeder and offbearer). Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## IV.   Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 6th day of August, 2015.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE